UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

**FILED**
MAY 16 2005

*****************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 05-30011 |
| Plaintiff, | * | |
| -vs- | * | ORDER AND OPINION |
| ALAN KENNETH TALKS, | * | |
| Defendant. | * | |

*****************************************************************

Defendant, Alan K. Talks ("Talks"), filed a motion (Doc. 16) for suppression of statements and evidence. U.S. Magistrate Judge Moreno conducted an evidentiary hearing on April 13, 2005, and filed and served a report and recommendation for disposition of the motion (Doc. 24). The Court has conducted a *de novo* review of the transcript of the hearing (Doc. 25 ), and all the files and records herein. There is some confusion generated by a reading of the transcript. The alleged weapon is called a "metal jack" (pages 13 and 24), an "iron bar" (pages 11, 17, and 52), a "bar-jack" (page 17), a "metal jack handle" (pages 28, 29), a "metal bar" (page 54), and a "gray iron bar" (pages 33, 34, 37 and three times on 38). I assume all concerned are talking about the same object but it is difficult to tell. Defendant has filed objections (Doc. 26) to the recommendation of the magistrate and the objections have been considered.

A county sheriff was contacted by a tribal police officer (while the tribal officer was tied up at the hospital with the alleged victim of the assault in question and during a time when tribal police were "short-handed") and asked to find and hold the defendant, Mr. Talks. The sheriff complied with that request. He detained Talks and transported him to an agreed upon meeting place on a public highway where the sheriff turned Talks over to the tribal policeman who had made the request for assistance. The sheriff also turned over the alleged weapon he had seen on the back seat of the vehicle being driven by Talks (prior to Talks parking the vehicle next to his housing unit). The claim is essentially that this was an illegal arrest by the sheriff who was not

cross-deputized and had no authority to make an arrest in Indian Country. Talks cites 18 U.S.C. §3041 *et seq.*, as, in effect, not permitting state or local law enforcement officers to make an arrest for a federal offense. Regardless of whether this argument has any validity, what happened here was not a federal arrest. The arrest was made in connection with the alleged violation of a tribal ordinance by Talks, namely the assault of another Indian by Talks, also an Indian, within the reservation boundaries. The action by the sheriff had no connection to any state action (i.e. by the State of South Dakota) or any county action. The present case is thus unlike United States v. Anderson, 857 F. Supp. 52 (D.S.D. 1994), where state parole agents came into Indian Country and executed a search and seizure. Chief Judge Piersol held that the parole officers had "no standing or position other than that of private citizens once they were in Indian country." In holding that the parole agents lacked criminal jurisdiction to conduct a warrantless search of defendant's residence in Indian country, he relied on the authority of Rosebud Sioux Tribe v. South Dakota, 900 F.2d 1164 (8th Cir. 1990), and State v. Spotted Horse, 462 NW2d 463 (S.D. 1990), while acknowledging that the parties had not cited and the court had not found "a case directly on point." Likewise, Anderson is not directly on point in the case now before the court.

The question is: was this an arrest that was in violation of the rights of Talks? "It is significant that the Bill of Rights does not apply to Indian tribal governments. *Talton v. Mayes*, 163 U.S. 376 . . . (1896). The Indian Civil Rights Act of 1968 provides some statutory guarantees of fair procedure, but these guarantees are not equivalent to their constitutional counterparts. There is, for example, no right under the Act to appointed counsel for those unable to afford a lawyer. See 25 U.S.C. §1302(6)." Duro v. Reina, 495 U.S. 676 (1990). The Eighth Circuit had established in an earlier case that it considered "the problem" under Fourth Amendment standards. *See* United States v. Lester, 647 F.3d 869 (8th Cir.1981). It would appear that Duro "watered down" Lester. What does it mean to state in Duro that the statutory guarantees "are not equivalent" to the Fourth Amendment? Are we considering what could be called "Fourth Amendment light"? Some would argue that the Fourth Amendment itself has already been rendered "light." To add further confusion, the Eighth Circuit, apparently without consideration of what was said in Duro, has observed in United States v. Schmidt, 403 F.3d 1009 (8th Cir. 2005), that the Fourth Amendment standards are applicable to the conduct of Indian

2

tribal officials in Indian Country because of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(2).

Was there specifically a violation by the tribe of 25 U.S.C. § 1302 (2) (i.e. the right of Talks to be secure in his person and effects against unreasonable search and seizures)? Was there a tribal violation of 25 U.S.C. § 1302 (8) (i.e. denying to Talks the equal protection of tribal laws or depriving him of liberty and property without due process of law)? If there was, how does this affect the later federal prosecution?

The sheriff did not formally arrest Talks. The magistrate found that the sheriff had stopped and detained Talks until he could be turned over to the tribal officer. Defendant claims, in his objections to the report and recommendation of the magistrate, that the magistrate viewed the sheriff as merely stopping and detaining the defendant for a "turn-over" to the tribal police officer. That is in general what happened. This does not change the fact that the defendant was handcuffed, placed in the rear seat of the sheriff's patrol vehicle, and was not free to leave, just as the magistrate so found. Contrary to the objections, the magistrate did state that "it appears that Talks was in custody when Menzel (the sheriff) questioned him." On that basis, the magistrate recommended the suppression of the statements of the defendant to the sheriff and properly so. I will clearly adopt that portion of the report and recommendation. It is clear, however, that the sheriff had no intention of holding the defendant in any jail setting and did not do so. Thus, the factual scenario is much less potentially unsettling than what happened in United States v. Terry, 400 F.3d 575 (8th Cir. 2005), where the defendant was held in the tribal jail overnight at the request of the county sheriff. I do agree with the magistrate that Terry is a very strong indication of what the Court of Appeals thinks of these "tag-team" cases. I also believe that it is significant that no principle of tribal sovereignty was violated or even threatened here. The sheriff was asked to do exactly what he did by a tribal officer under somewhat exigent circumstances. Although there did not appear to be any emergency, the tribal officer needed help, asked for it, and received it.

There is nothing in the record to indicate that the tribal officer asked the sheriff to obtain any evidence, including the alleged weapon. On what basis, therefore, would the sheriff have lawfully removed the alleged weapon from the back seat of the vehicle in question? What is the

3

legal significance of the sheriff going beyond what he was authorized and asked to do by the tribal police officer? In addition, there is some confusion and doubt in the record as to what standing the defendant had to complain as to the sheriff entering the vehicle and removing the weapon. Such questions should also be addressed and "cleared up" in connection with the remand to be ordered.

In looking at actions by tribal police, apparently one consideration may be what has been the "standard practice" on that reservation. *See* Lester, fn 7 at 873, making reference to United States v. Edwards, 415 U.S. 800, 804 (1974). The United States Supreme Court did mention historical evidence as to an established and routine tribal custom of permitting a jailer to search the person who is being processed for confinement under his custody and control. The Court also took note of the principle that a rule of practice must not be allowed to prevail over a constitutional right. *See* Edwards, fn 6 at 804. There is no evidence in the existing record as to what standard practice is on the Cheyenne River Sioux Indian Reservation as to these "tag-team" activities. "While modern tribal courts include many familiar features of the judicial process, they are influenced by unique customs, languages, and usages of the tribes they serve. Tribal court are often 'subordinate to the political branches of tribal governments,' and their legal methods may depend on 'unspoken practices and norms.'" Duro at 693 (quoting from F. Cohen, Handbook of Federal Indian Law, 1982 ed. at 334-335).

This matter should be recommitted to the magistrate pursuant to Fed.R.Civ.P. 72(b) with instructions to conduct a limited further hearing, make findings, and make further recommendations as to what standard practices and customs are on the Cheyenne River Sioux Indian Reservation as to county sheriffs and deputies providing assistance as requested by tribal police officers similar to what was done in this case, and as to certain other questions discussed in this opinion and order. The trial of this case is set for August 9 and there is time to develop a complete record.

Now, therefore,

IT IS ORDERED, as follows:

(1) This matter is recommitted to the magistrate pursuant to Fed.R.Civ.P. 72(b) with instructions to conduct a further hearing, make findings, and make further recommendations as to

4

(a) what standard practices and customs are on the Cheyenne River Sioux Indian Reservation as to county sheriffs and deputies providing assistance similar to what was done in this case, (b) findings of fact and conclusions of law as to the removal of the alleged dangerous weapon, and (c) standing of the defendant to object to removing the alleged dangerous weapon which was in plain view in the motor vehicle in question.

(2) The report and recommendation is adopted to the extent it recommends suppression of the statements made by the defendant to Sheriff Menzel on January 3, 2005.

(3) That portion of the motion to suppress (Doc. 16) as to the statements to Sheriff Menzel is granted.

Dated at Aberdeen, South Dakota, this 16th day of May, 2005.

BY THE COURT:

*[signature]*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *[signature: Barbara J. Paepke]*
DEPUTY
(SEAL)